Carla G. McClurg, CSB 227738
Office of the United States Trustee
620 SW Main Street, Suite 213
Portland, OR 97205
Telephone: (503) 326-7659

Attorney for Robert D. Miller Jr., Region 18 United States Trustee

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>Paul Brenneke Qualified Personal Residence Trust UDT,<br><br>Debtor | Case No. 11-31975-tmb11<br><br>UNITED STATES TRUSTEE'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR CONVERT CHAPTER 11 CASE<br><br>Hearing Date: January 3, 2012<br>Hearing Time: 9:00 a.m.<br>Location: Courtroom 4 |

The United States Trustee, Robert D. Miller Jr. (the "UST"), by and through Trial Attorney Carla G. McClurg, submits this supplemental memorandum in support of his Motion to Dismiss or Convert Chapter 11 Case filed on September 21, 2011, docket number 31. A hearing on the UST's Motion to Dismiss or Convert Chapter 11 Case is set for January 3, 2012.

## **ARGUMENT**

The debtor trust is not eligible for bankruptcy relief. Despite the debtor's ineligibility for bankruptcy relief, the petitioning creditors colluded to file an involuntary petition against the debtor to stop an impending foreclosure and oust Thomas Brenneke as trustee. At least four of the debts listed on the involuntary petition

1  (associated with two creditors) were paid in full by the debtor in 2008.  While in
2  bankruptcy, the debtor has reported receiving no income other than small contributions
3  by Paul Brenneke.  The debtor has failed to comply with basic bankruptcy requirements.
4  The debtor is delinquent in its payment of quarterly fees required by 28 U.S.C. §
5  1930(a)(6).  The debtor has also failed to timely file its October 2011 monthly operating
6  report.

## FACTUAL HISTORY

**The QPRT and Its Assets**

In 2001, Paul Brenneke ("Brenneke") purchased real property located at 11710 SW Summerville Avenue, Portland, Oregon (the "Residence"). Exhibit 30, p. 12, li. 25 - p. 13, li. 2.  Brenneke, his children, and the children's mother, Elene Dunavan ("Dunavan"), live in the Residence. Exhibit 27, p. 10, li. 16-22.

On or about November 5, 2004, Brenneke signed a trust agreement to create the Paul Brenneke Qualified Personal Residence Trust UDT (the "QPRT") by which he transferred the Residence to the QPRT to create an irrevocable qualified residence trust within the meaning of the Internal Revenue Code. Exhibit 3. Brenneke's brother, Thomas Brenneke ("Thomas"), agreed to serve as the trustee.  Exhibit 3, p. 9.

The trust agreement provided that Thomas, as trustee, was to hold and maintain the Residence as a personal residence of Brenneke for the term of the QPRT and then distribute the QPRT assets to Brenneke's children upon the termination of the QPRT. Exhibit 3, pp. 2-4.  The QPRT's date of termination is the earlier of November 5, 2029 or the date of Brenneke's death.  Exhibit 3, p. 3.

Under the trust agreement, the trustee of the QPRT is prohibited from holding any assets other than the Residence, policies of insurance on the Residence, and funds contributed to or paid for the maintenance, improvement, or sale of the Residence in an amount reasonably expected to be paid within six months of the contribution. Exhibit 3,

pp. 1-2, 3, 4. Cash held by the QPRT is required to be distributed by Thomas, or a successor trustee, to Brenneke to the extent that it exceeds six months of anticipated expenses for the Residence. Exhibit 3, p. 2.

The trust agreement forming the QPRT provided that it is "irrevocable and therefore may not be modified, amended, or revoked by the Transferor or any other person." Exhibit 3, p. 1. The only exception to the prohibition on the modification or amendment of the QPRT trust agreement is that the trustee, acting alone, has the power to amend the trust document for "the sole purpose of ensuring that the trust qualifies as a qualified personal residence trust for purposes of section 2701(a)(3)(A) of the Code and section 25.2702-5(c) of the regulations." Exhibit 3, p. 1.

On or about March 1, 2011, Brenneke signed an Amendment of the Paul Brenneke Personal Residence Trust (the "Amendment") purporting to make several amendments to the QPRT. Exhibit 4. The purported amendments included adding language providing:

> The assets of the Trust shall be used for business purposes. The Trustee shall manage the income from the earnings of the Trust which is derived from the investment of the proceeds of the equity of the Residence, and such investment income shall first be used to make all payments due on the Residence, and second reinvested to generate more income for the Trust, all for the purpose of creating a business income stream for the Trust.

Exhibit 4, p. 1.

The evidence will show that Thomas would not authorize the filing of a voluntary bankruptcy case by the QPRT as a result of legal advice he received that the QPRT was not eligible for bankruptcy relief.

**The Involuntary Petition**

The Residence was scheduled to be sold at a foreclosure sale on March 17, 2011 pursuant to a Notice of Default recorded on November 5, 2010. Exhibit 6. On March 14, 2011, the Circuit Court for the County of Multnomah entered orders allowing

Page 3 - UNITED STATES TRUSTEE'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR CONVERT CHAPTER 11 CASE

Robert S. Simon ("Simon") to withdraw as counsel for the QPRT in the matters of <u>Western Pacific Building Materials, Inc. v. David McPherson Jones, et al.</u>, Case No. 0904-05801 and <u>Travelers Casualty & Surety of America v. Anthony Paul Brenneke, et al.</u>, Case No. 0907-09814. <u>Exhibits</u> 7 and 8.

On March 14, 2011, the same day as entry of the orders authorizing Simon's withdrawal as counsel for the QPRT, an involuntary petition was filed against the QPRT by four petitioning creditors. <u>Exhibit</u> 1. The Z&A Trust, Victor Le Nettoyeur LLC ("VLN"), Dunavan, and D&J Remodeling were the petitioning creditors. <u>Exhibit</u> 1, pp. 2-3. Simon signed the involuntary petition as the attorney for the Z&A Trust, VLN, and Dunavan. <u>Exhibit</u> 1, p. 2.

Jimmy Drakos ("Drakos") signed the involuntary petition as the trustee of the Z&A Trust and as the manager of VLN. <u>Exhibit</u> 1, p. 2. Drakos is a long-time friend of Brenneke. <u>Exhibit</u> 27, p. 9, li. 1-4; <u>Exhibit</u> 28, p. 8, li. 4-13. The beneficiaries of the Z&A Irrevocable Trust are two of Brenneke's and Dunavan's minor children. <u>Exhibit</u> 27, p. 14, li. 22 - p. 15, li. 10. VLN is owned as follows: 99 percent by the Z&A Trust and 1 percent by the Dunavan Family Trust UDT (the "Dunavan Trust"). <u>Exhibit</u> 34.

On the involuntary petition, Drakos represented that the Z&A Trust held a claim of $1,979,949 against the QPRT and that VLN held a claim of $157,096 against the QPRT. <u>Exhibit</u> 1, p. 2. Dunavan represented on the involuntary petition that she held a claim of $1.2 million against the QPRT. <u>Exhibit</u> 1, p. 2. Dave Jones ("Jones") represented on the involuntary petition that D&J Remodeling held a claim of $367,511 against the QPRT. <u>Exhibit</u> 1, p. 3.

An involuntary summons was issued by the court on March 15, 2011. On or about March 21, 2011, Thomas resigned as trustee of the QPRT due to the QPRT's involuntary bankruptcy case and agreement to indemnify him on account of his personal

guaranty of a loan in default from Frontier Bank[1] secured by the Residence. Exhibit 11.

On May 4, 2011, Simon filed a Motion to Enlarge Time to Answer Summons on behalf of VLN, the Z&A Trust, Dunavan, and Jones (the principal of D&J remodeling) requesting a 60-day extension of time for the QPRT to file an answer to the involuntary petition. The stated reason for the extension was that the "moving party" became aware that the trustee and the alternative trustee for the QPRT had resigned, and the QPRT needed additional time to respond until a replacement trustee could be appointed. On May 12, 2011, the court entered an order extending the deadline for the QPRT to answer the involuntary petition through and including July 5, 2011.

On or about July 4, 2011, Dunavan agreed to serve as trustee for the QPRT and signed a Resolution and Amendment accepting her appointment as trustee. Exhibit 5. On July 5, 2011, a letter dated July 4, 2011 signed by Dunavan was filed with the court, docket number 14. In the letter, Dunavan represented that she would "drop" her claim against the QPRT and was appointed as the new trustee. Dunavan requested additional time to locate an attorney to represent the QPRT. Pursuant to an order entered on July 21, 2011, the court extended the deadline for the filing of an involuntary answer through August 5, 2011.

On August 5, 2011, the QPRT filed an answer to the involuntary petition representing that it was not paying its bills as they became due and requesting that an order for relief be entered. An order for relief under chapter 11 was entered on August 8, 2011.

On or about August 22, 2011, Dunavan signed schedules, Statement of Financial Affairs, and related documents (the "Bankruptcy Documents") under penalty of perjury on behalf of the QPRT. Exhibit 2. The Bankruptcy Documents were filed on August 22, 2011. Exhibit 2.

---

[1] The UST understands this note is now held by Union Bank. See Exhibit 2, p. 8.

**The QPRT's Payment of the Z&A Trust and VLN Claims**

In or about early 2008, Simon negotiated a $1 million loan with Frontier Bank on behalf of his clients, the QPRT and the Z&A Trust, secured by the Residence. Exhibit 14. The purpose of the loan was to pay off all existing encumbrances on the Residence except the first mortgage of Bank fo America. Exhibit 14.

On April 24, 2008, Simon sent escrow instructions to Old Republic Title on behalf of the QPRT and the Z&A Trust. Exhibit 17. Simon instructed Old Republic Title to distribute proceeds to satisfy the following encumbrances on the Residence: a trust deed originally granted by Brenneke to Key Bank National Association (the "Key Bank Note") which had been assigned to Willamette Capital Group, LLC ("Willamette Capital"); a trust deed originally granted by Brenneke to Thomas J. Coad (the "Coad Note") and subsequently assigned to Willamette Capital; a judgment obtained by Nolan Losky against Brenneke (the "Losky Judgment") subsequently assigned to the Z&A Trust; and a judgment obtained by Moss Adams LLP against Brenneke which had been assigned to Willamette Capital. Exhibit 16, pp. 3-5; Exhibit 17, p. 3; Exhibit 35. Drakos is the principal of Willamette Capital. Exhibit 28, p. 29, li. 9. Willamette Capital acted as an assignee for collection purposes for the Z&A Trust. Exhibit 18.

The Frontier Bank loan transaction closed on April 25, 2008. Exhibit 19. As instructed by Simon, Old Republic Title paid $402,000 to the Z&A Trust in full satisfaction of the Losky Judgment. Exhibit 16, p. 4; Exhibit 17, p. 3. On April 25, 2008, $402,000 was deposited by Old Republic Title into a Frontier Bank account held in name of the Z&A Trust pursuant to Simon's instructions. Exhibit 17, p. 3; Exhibit 20; Exhibit 21, pp. 4-5. Drakos signed a Satisfaction of Judgment on April 23, 2008 representing that the Losky Judgment was satisfied as Willamette Capital had "received funds adequate to satisfy the judgment." Exhibit 23. The Satisfaction of Judgment was not recorded.

Old Republic Title also paid $80,000 to the Z&A Trust in full satisfaction of the Moss Adams Judgment pursuant to Simon's instructions. Exhibit 16, p. 5; Exhibit 17, p. 3. On April 25, 2008, $80,000 was deposited by Old Republic Title into a Frontier Bank account held in the name of the Z&A Trust pursuant to Simon's instructions. Exhibit 17, p. 3; Exhibit 20; Exhibit 21, pp. 6-7. Drakos signed a Satisfaction of Judgment on April 24, 2008 representing that the Moss Adams Judgment was satisfied as Willamette Capital had "received funds adequate to satisfy the judgment," Exhibit 24.

In accordance with Simon's instructions, Old Republic Title also paid $322,452.30 in full satisfaction of the Key Bank Note and the Coad Note. Exhibit 16, pp. 3-4; Exhibit 17, p. 3. On April 28, 2008, Old Republic Title deposited $322,452.30 into a Frontier Bank account held in the name of the Z&A Trust pursuant to Simon's instructions. Exhibit 17, p. 3; Exhibit 20; Exhibit 21, pp. 1-2.

Although the Losky Judgment, the Moss Adams Judgment, the Key Bank Note, and the Coad Note were paid off by Old Republic Title in accordance with Simon's instructions, Drakos listed all of these obligations as still being owed by the QPRT to the Z&A Trust on the involuntary petition. Exhibit 1, pp. 1, 4, 15.

**Dunavan's Alleged Claim Against the QPRT**

Dunavan testified under oath as the representative of the QPRT at the meeting of creditors held in this case pursuant to 11 U.S.C. § 341(a) on September 12, 2011. Exhibit 27. When Dunavan was asked at the meeting of creditors if she was ever a creditor of the QPRT, she testified: "I think I was initially." Exhibit 27, p. 10, li. 23-25. Dunavan testified that the $1.2 million debt she listed as a petitioning creditor on the involuntary petition was "for the loan that we took out and gave to Tom Brenneke." Exhibit 27, p. 12, li. 6-13. When Dunavan was asked if she loaned $1.2 million to the QPRT from personal funds of her own, she testified: "I – I don't even know how to – I don't know how to answer that." Exhibit 27, p. 13, li. 3-9.

In response to the UST's request following the meeting of creditors that Dunavan provide documentation of the $1.2 million debt she originally listed on the petition, the UST was provided with cancelled checks in the total amount of $1,692,877 made payable to Jones and D&J Remodeling for remodeling work done on the Residence. Exhibit 26. Dunavan did not testify at the meeting of creditors that she loaned money to the QPRT for remodeling work. Exhibit 27, p. 11, li. 15 - p. 14, li. 11; p. 31, li. 17 - p. 32, li. 21. Jones testified at his deposition on December 5, 2011 that he submitted his invoices to Brenneke on a monthly basis. Exhibit 29, p. 8, li. 20-24. After Brenneke reviewed Jones' bills, he directed Dunavan to issue a check to Jones for payment. Exhibit 29, p. 8, li. 22-24.

During the meeting of creditors, Dunavan testified that she no longer had a claim against the QPRT. Exhibit 27, p. 32, li. 8-10. In response to a question asking Dunavan why she waived her claim, Dunavan testified: "I think my position changed." Exhibit 27, p. 32, li. 20-21.

**Collusion by Several Petitioning Creditors**

Brenneke and Drakos threatened to engineer involuntary bankruptcy cases against Thomas and/or entities controlled by Thomas before and after the QPRT involuntary petition was filed. Exhibit 12, pp. 2-3; Exhibit 10, p. 4. The evidence will show that Thomas investigated the possibility of filing a voluntary bankruptcy case to stop the foreclosure of the Residence. The evidence will show that Thomas determined that the QPRT was not eligible to file a bankruptcy case based on advice he received from his attorneys. Brenneke engineered the filing of the QPRT involuntary petition. Exhibit 27, p. 55, li. 10-15; Exhibit 29, p. 12, li. 11-21. Dunavan and Jones testified that Brenneke suggested that they sign the involuntary petition. Exhibit 27, p. 55, li. 10-15; Exhibit 29, p. 12, li. 11-21.

/ / /

**The QPRT's Lack of Income and Resources to Fund a Plan**

At the meeting of creditors, Dunavan testified that the only income of the QPRT consists of funds provided by Brenneke. Exhibit 27, p. 17, li. 18 - p. 18, li. 1. No cash or bank accounts are listed on Schedule B. Exhibit 2, p. 4. Dunavan testified that the $500 deposited into the QPRT's debtor-in-possession account was contributed by Brenneke. Exhibit 27, p. 5, li. 3 - li. 20. Dunavan testified that she believed that the mortgage payment on the Residence was approximately $18,000 per month and that a payment had not been made for approximately one year. Exhibit 27, p. 18, li. 11 - li. 24; p. 21, li. 3-6.

The QPRT's monthly operating report for August 2011 filed on October 26, 2011 reflects that the QPRT had no income and no cash. Exhibit 37, pp. 2-3. The QPRT's monthly operating report for September 2011 filed on October 26, 2011 shows that the only income received was an unauthorized loan to pay insurance and that the QPRT only had $50 in cash. Exhibit 38, pp. 2-3.

The assets reported on the QPRT's schedules include: the Residence valued at $4.2 million (encumbered by secured debts totaling $5,157,752.14 according to Schedule D); a note payable from GM Pine Street Garage Fund, LLC valued at $1,068,271; and claims against Thomas valued at $1 million. Exhibit 2, pp. 3-9. At the meeting of creditors, Dunavan testified that the QPRT plans to exit from chapter 11 by restructuring its mortgage debts and by getting Thomas to "pay back the debt that he's responsible for." Exhibit 27, p. 20, li. 19-25.

Dunavan testified at the meeting of creditors that she could not explain the GM Pine Street Garage Fund, LLC note payable. Exhibit 27, p. 25, li. 3-8. Dunavan testified that Brenneke would have information regarding this asset. Exhibit 27, p. 25, li. 20-23. Following the meeting of creditors, the QPRT produced to the UST a revolving line of credit promissory note dated July 25, 2008 between GM Institutional

1 Fund, LLC and the Z&A Trust.  Exhibit 31.  Brenneke testified at his deposition on
2 December 5, 2011 that GM Pine Street Garage Fund, LLC "is an investment vehicle that
3 substantially all of the Z&A Trust assets were contributed into in 2008."  Exhibit 30, p.
4 20, li. 3-7.  It appears that the GM Pine Street Garage Fund, LLC note payable disclosed
5 on Schedule B is actually an asset of the Z&A Trust rather than the QPRT.

Regarding the claim against Thomas in the amount of $1 million listed on Schedule B, Dunavan testified that Thomas borrowed money from the QPRT from the proceeds of the Frontier Bank loan and that the claim against Thomas listed on Schedule B related to that loan.  Exhibit 27, p. 26, li. 17 - p. 27, li. 7.  The QPRT did not receive any funds from the Frontier Bank loan.  Exhibit 20.  The Z&A Trust received substantial funds from the Frontier Bank Loan.  Exhibit 20.

Brenneke testified at his deposition that he and Dunavan would fund the QPRT's plan.  Exhibit 30, p. 37, li. 4-7.  Brenneke testified that he works for Guardian Investment Real Estate but that he personally does not have any income.  Exhibit 30, p. 7, li. 20-22; p. 8, li. 16-20; p. 37, li. 8-15.  Brenneke further testified that the money to fund a plan would have to come from Dunavan or Dunavan Family, LLC.  Exhibit 30, p. 37, li. 17-21.  Brenneke testified that Dunavan draws a small paycheck from Guardian Investment Real Estate to cover insurance for herself and the household.  Exhibit 30, p. 40, li. 8-17.  Other than income received by Brenneke and Dunavan, Brenneke testified that the sale of assets by the Z&A Trust and Dunavan Family, LLC could be used to fund a plan.  Exhibit 30, p. 38, li. 9-20.  Brenneke testified that the Z&A Trust assets include a possible fee for assisting a Seattle developer in a transaction involving the exercise of an option; possible income from a plan (if confirmed) in the case of GM Pine Street Garage, LLC, Case No. 11-17493-KAO pending in the Western District of Washington; and a patent Brenneke is attempting to monetize.  Exhibit 30, p. 40, li. 20 - p. 43, li. 25.  Brenneke testified at his deposition that he did not know what assets

Dunavan Family, LLC owns. Exhibit 30, p. 9, li. 18-21.

**The QPRT's Failure to Pay Quarterly Fees and Timely File Monthly Operating Reports**

The QPRT's October 2011 monthly operating report was due on November 21, 2011. Pursuant to an order entered on November 25, 2011, the deadline for the QPRT to file the October monthly operating report was extended through and including November 30, 2011. The deadline has not been further extended. The QPRT has not filed its October monthly operating report as of the date of this memorandum.

The QPRT has failed to timely pay fees required by 28 U.S.C. § 1930(a)(6). The QPRT was billed for fees for the first, second, and third quarters[2] of 2011 in the total amount of $975. The fees were due on October 31, 2011. The QPRT has not paid these required fees as of the date of this memorandum.

## LEGAL ANALYSIS

The court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A) and (O). Pursuant to 11 U.S.C. § 307, the United States Trustee may raise, appear, and be heard on any issue in any case or proceeding under Title 11.

**A.  Cause for dismissal of this case is established.**

Section 1112(b) of the Bankruptcy Code provides that the court shall convert a chapter 11 case to one under chapter 7 or dismiss a chapter 11 case, whichever is in the best interest of creditors and the estate, if the movant establishes "cause." The Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA") expanded the definition of "cause" for relief under § 1112(b) and limited the court's discretion under section 1112(b) once the movant establishes cause. See 11 U.S.C. §§ 1112(b)(1), (b)(2).

---

[2] The QPRT owes fees as of the date of the commencement of the case, which is March 14, 2011.

Prior to BAPCPA, section 1112(b) provided that a court "may" convert or dismiss a chapter 11 case for cause. See In re Prods. Int'l Co., 395 B.R. 101, 108 (Bankr. D. Ariz. 2008).

Section 1112(b) includes a non-exhaustive list of examples of "cause" for the dismissal or conversion of a chapter 11 case. 11 U.S.C. § 1112(b)(4); see In re Consolidated Pioneer Mortg. Entities, 248 B.R. 368 (9th Cir. BAP 2000) (the list of cause in section 1112(b) is illustrative rather than exhaustive).

### 1. Lack of Eligibility

Although not enumerated in § 1112(b)(2), lack of eligibility to be a debtor is cause for dismissal. Only a "person" as defined by 11 U.S.C. § 101(41) may be a debtor under Title 11. 11 U.S.C. § 109(a). A "person" includes an individual, partnership and corporation. 11 U.S.C. § 101(41). A "corporation" is defined to include a business trust. 11 U.S.C. § 101(9)(A)(v). A trust is therefore eligible for relief under Title 11 only if it is a business trust. See In re Hunt, 160 B.R. 131, 135 (9th Cir. BAP 1993).

Bankruptcy courts have consistently denied family and estate planning trusts the standing to pursue bankruptcies. See In re Sung Soo Rim Irrevocable Intervivos Trust, 177 B.R. 673, 678 (Bankr. C.D. Cal. 1996). Unlike business trusts, family and estate planning trusts are almost always governed by state probate and estate laws, which offer an alternative forum for resolution of problems arising under the trust. Id. at 678. The burden of establishing eligibility lies with the party filing the bankruptcy petition. In re the Karoly Vandel Foldesi and Margaret Foldesi Family Land Trust #3, 2003 WL 25273865 (Bankr. D. Idaho 2003) (Case No. 02-03410) (citing Montgomery v. Ryan (In re Montgomery), 37 F.3d 413, 415 (8th Cir. 1994)).

Functional tests for identifying business trusts include a demonstrated business purpose, transferability of interests, and continuity of existence uninterrupted by death among beneficial owners. In re Sung Soo Rim Irrevocable Intervivos Trust, 177 B.R. at

677.

The QPRT is an irrevocable qualified residence trust. Under the original trust agreement, the assets of the QPRT are limited to the Residence, policies of insurance on the residence, and funds contributed or paid for the maintenance, improvement, or sale of the Residence. The QPRT's existence is limited and is linked to Brenneke's lifespan.

The QPRT consented to the entry of an order for relief and has the burden of establishing its eligibility to be a debtor. The language in the Amendment regarding the QPRT assets being used for a business purpose is without substance. The QPRT was established for the purpose of holding the Residence for the benefit of Brenneke's children and for tax planning. The QPRT was not formed to operate a business. The QPRT has no income other than amounts contributed by Brenneke.

Moreover, the Amendment was not effective under the trust documents. The original document creating the QPRT provided that it could only be amended by the trustee of the QPRT for certain limited purposes relating to eligibility under tax law as a qualified residence trust. Only Brenneke signed the Amendment. The trustee at the time, Thomas, did not sign the Amendment.

The QPRT's purpose is to protect the family residence for the benefit of Brenneke's children – not a business purpose. Therefore, the QPRT is not eligible to be a debtor under Title 11.

**2. Bad Faith**

Although not enumerated in § 1112(b)(2), lack of good faith in filing a chapter 11 petition establishes cause for dismissal. In re Marsch, 36 F.3d 825, 828 (9th Cir. 1994). "The existence of good faith depends on an amalgam of factors and not upon a specific fact." Id. (citing In re Arnold, 806 F.2d 937, 939 (9th Cir. 1986)). The test is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis. Id. Collusion in the filing of a

bankruptcy petition is cause for dismissal if there appears to be concerted action between the debtor and petitioning creditors and these parties fraudulently invoke the jurisdiction of the bankruptcy court. In re Valdez, 250 B.R. 386, 390 (D. Or. 1999).

This case was commenced in bad faith. It appears that the involuntary petition was filed to force Thomas to resign as trustee of the QPRT and to save the Residence from foreclosure. All of the petitioning creditors, except D&J Remodeling, include persons residing in the Residence or entities created for their benefit. The beneficiaries of the QPRT are also the beneficiaries of the Z&A Trust, a petitioning creditor and holder of an interest in 99 percent of Victor Le Netoyeur LLC, another petitioning creditor.

Brenneke engineered the filing of the involuntary petition. Dunavan testified at the meeting of creditors that it was Brenneke's idea that she sign the involuntary petition as a creditor. Jones testified that Brenenke presented him with the involuntary petition to sign.

It appears that Simon has given advice and possibly otherwise facilitated the filing of an involuntary petition against his former client, the QPRT. Simon represented the QPRT through the eve of the filing of the involuntary petition. On the same day as his withdrawal from two pending state court matters in which Simon represented the QPRT, Simon signed the involuntary petition on behalf of three petitioning creditors. Two of the petitioning creditors represented by Simon, the Z&A Trust and VLN, included debts that had been paid off through the Frontier Bank loan pursuant to Simon's escrow instructions.

Based on the evidence, it appears that Brenneke, Simon, and most of the petitioning creditors colluded to improperly invoke the protections of the Bankruptcy Code.

/ / /

### 3. Substantial or Continuing Loss to or Diminution of the Estate and the Absence of A Reasonable Likelihood of Rehabilitation

Under § 1112(b)(4)(A), "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" constitutes cause for the dismissal or conversion of a chapter 11 case. Therefore, under § 1112(b)(4)(A), the movant must establish both (i) a continuing loss to or diminution of estate assets, and (ii) an absence of a reasonable likelihood of rehabilitation. In re Wahlie, 417 B.R. 8, 11 (N.D. Ohio 2009). In determining if there is a loss or diminution of estate assets, the court considers whether the debtor has suffered or continues to experience negative cash flow, or, alternatively, declining asset values. Id.

The QPRT has not made a mortgage payment on the Residence for at least a year. The QPRT's monthly operating reports demonstrate that it has received no income other than an unauthorized loan to pay insurance. The assets that Dunavan testified would be used to fund the plan, the note payable owed by GM Pine Street Garage Fund, LLC and the claim against Thomas, appear to belong to the Z&A Trust – not the QPRT. Brenneke's testimony regarding possible sources of plan funding included assets of the Z&A Trust which have not been reduced to cash and some of which are dependent on other events. The QPRT's lack of income and assets and speculative sources of plan funding support the conclusion that this case should not be permitted to remain in chapter 11.

### 4. Failure to Pay Quarterly Fees and File Monthly Operating Report

Under § 1112(b)(4)(K), the failure to pay fees required under 11 U.S.C. §1930(a)(6) is cause for dismissal or conversion. The QPRT has failed to timely pay quarterly fees and owes $975 as of the date of this memorandum.

Pursuant to § 1112(b)(4)(F), the failure to satisfy timely any filing or reporting requirement established by Title 11 or any applicable rule is cause for dismissal or

conversion. The QPRT has failed to file its October 2011 monthly operating report, which was due on November 30, 2011.

**B. Dismissal is in the best interests of creditors and the estate.**

Pursuant to § 1112(b)(1), once cause has been established, the court must determine whether conversion or dismissal is "in the best interests of creditors and the estate." In re Owens, 552 F.3d 958, 959 (9th Cir. 2009). The QPRT is not eligible to be a debtor under any chapter of the Bankruptcy Code. Therefore, this case should be dismissed.

## CONCLUSION

This case should be dismissed. The QPRT is not eligible to be a debtor under the Bankruptcy Code. The involuntary petition was filed as a result of collusion between Brenneke, Simon, and certain petitioning creditors. The QPRT has failed to timely pay quarterly fees and file monthly operating reports.

DATED this 20th day of December, 2011.

    Respectfully submitted,

    ROBERT D. MILLER JR.
    United States Trustee

    /s/ Carla G. McClurg
    CARLA G. McCLURG, CSB# 227738
    Trial Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2011, I served a copy of the foregoing UNITED STATES TRUSTEE'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR CONVERT CHAPTER 11 CASE by mailing a copy of this document, by United States first class mail, postage prepaid, addressed to the following:

Paul Brenneke Qualified Personal Residence Trust UDT
710 NW 14th Ave, 2nd Fl
Portland, OR 97209

Paul Brenneke Qualified Personal Residence Trust UDT
11710 SW Summerville Ave.
Portland, OR 97219

Z&A Irrevocable Trust UDT
333 S. State Street #286
Lake Oswego, OR 97034

Victor Le Nettoyeur LLC
333 S. State Street #286
Lake Oswego, OR 97034

Jones Dave D&J Remodeling
20672 NW Quail Hollow
Portland, OR 97229

ROBERT D. MILLER JR.
United States Trustee

/s/ Carla G. McClurg
CARLA G. McCLURG, CSB 227738
Trial Attorney